UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :
        - against -                                   :
                                                      :  S1 07 Cr. 907 (SAS)
                                                      :
JOHN MELICHAREK,                                      :
        a/k/a "Rocky,"                                :  ORAL ARGUMENT
MICHAEL IUNI,                                         :  REQUESTED
DOMINICK MEMOLI,                                      :
        a/k/a "Shakes,"                               :
ANGELO NICOSIA,                                       :
LOUIS PIPOLO,                                         :
DARDIAN CELAJ,                                        :
        a/k/a "Danny,"                                :
ENED GJELAJ,                                          :
        a/k/a "Neddy,"                                :
GJELOSH KRASNIQI,                                     :
        a/k/a "Jimmy,"                                :
                Defendants.                           :
                                                      :
                                                      :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION BY DEFENDANT DOMINICK MEMOLI

# TABLE OF CONTENTS

<u>Page</u>

Statement of Facts ................................................................................................ 1

Argument ............................................................................................................ 4

I.     Severance Should Be Granted Pursuant to Rule 8(b) or Rule 14 .......................... 4

    1.     Severance of the Home Invasion Counts or  Mr. Memoli Should Be Granted Pursuant to Rule 8(b) ........................................................................ 4

          (a)     There is No Substantial Identity of Facts or Participants ............... 5

          (b)     There is No Common Plan or Scheme ............................................ 6

    2.     The Morris County Home Invasion Counts Should Be Severed  from the Orange County Home Invasion Counts Pursuant to Rule 8(b) ............. 8

    3.     Severance Should Also Be Granted Pursuant to Rule 14 ........................... 9

II.    The Government Should Be Directed to Comply with Defendants' Discovery Requests ........................................................................................ 15

    1.     The Government Should Be Required to Identify  Prior to Trial the Audio Evidence It Will Seek to Introduce ................................................ 16

    2.     The Government Should Be Required to Provide Particularity with Respect to Certain Allegations ................................................................ 17

III.   Mr. Memoli Adopts the Motions of His Co-Defendants to the Extent They Are Not Inconsistent with the Instant Motion ...................................................... 20

Conclusion ......................................................................................................... 20

# TABLE OF AUTHORITIES

Page

## Cases

Bruton v. United States, 391 U.S. 123 (1968) .................................................. 13

Crawford v. Washington, 541 U.S. 36 (2004) .................................................. 13

Kotteakos v. United States, 328 U.S. 750 (1946) ........................................... 5, 7

Ohio v. Roberts, 448 U.S. 56 (1980).............................................................. 13

Opper v. United States, 348 U.S. 84 (1954)..................................................... 10

United States v. Attanasio, 870 F.2d 809 (2d Cir. 1989) ................................. 5, 7

United States v. Barnes, 158 F.3d 662 (2d Cir. 1998) ................................. 18, 19

United States v. Bellomo, 954 F. Supp. 630 (S.D.N.Y. 1997)........................ 7, 12

United States v. Berkowitz, 662 F.2d 1127 (5th Cir. 1981)............................... 14

United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987)............................... 18

United States v. Branker, 395 F.2d 881 (2d Cir. 1968)..................................... 13

United States v. Cannone, 528 F.2d 296 (2d Cir. 1975) ................................... 16

United States v. Capra, 501 F.2d 267 (2d Cir. 1974)....................................... 13

United States v. Carpentier, 689 F.2d 21 (2d Cir. 1982)................................... 14

United States v. Carrozza, 728 F. Supp. 266 (S.D.N.Y. 1990), aff'd, 956 F.2d
    1160 (2d Cir. 1992) ..................................................................................... 5, 6

United States v. Chas. Pfizer & Co., 217 F. Supp. 199 (S.D.N.Y. 1963) ......... 15

United States v. Copeland, 336 F. Supp. 2d 223 (E.D.N.Y. 2004)................... 15

United States v. De Palma, 461 F. Supp. 778 (S.D.N.Y. 1978)........................ 15

United States v. DiNome, 954 F.2d 839 (2d Cir. 1992)..................................... 14

*United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987), aff'd, 863 F.2d 185 (2d Cir. 1988) .................................................................................. 10, 13, 14

*United States v. Gallo*, No. 98 CR. 338 (JGK), 1999 WL 9848 (S.D.N.Y. Jan. 11, 1999) ....................................................................................................... 8

*United States v. Giffen*, 379 F. Supp. 2d 337 (S.D.N.Y. 2004) ......................... 16

*United States v. Giraldo*, 859 F. Supp. 52 (E.D.N.Y. 1994), aff'd in relevant part 80 F.3d 667 (2d Cir. 1996) ............................................................................. 9

*United States v. Gotti*, 399 F. Supp. 2d 214 (S.D.N.Y. 2005), aff'd sub nom. *United States v. Matera*, 489 F.3d 115 (2d Cir. 1007) .................................. 16

*United States v. Gotti*, No. S8-02-CR-743 (RCC), 2004 WL 2423799 (S.D.N.Y. Oct. 29, 2004) ............................................................................................... 14

*United States v. Haynes*, 16 F.3d 29 (2d Cir. 1994) ......................................... 14

*United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965) .................................. 13, 14

*United States v. Kopituk*, 690 F.2d 1289 (11th Cir. 1982) ................................. 5

*United States v. Lech*, 161 F.R.D. 255 (S.D.N.Y. 1995) .......................... 5, 6, 8

*United States v. Locascio*, 357 F. Supp. 2d 536 (E.D.N.Y. 2004) .................... 12

*United States v. Maisonet*, No. S3-97-CR-0817 (DC), 1998 WL 355414 (S.D.N.Y. July 1, 1998) .................................................................................. 7

*United States v. McClain*, 377 F.3d 219 (2d Cir. 2004) .................................. 13

*United States v. Menashe*, 741 F. Supp. 1135 (S.D.N.Y. 1990) ........................ 9

*United States v. Moon*, No. 88-CR-64, 1988 U.S. Dist. LEXIS 9306 (N.D.N.Y. Aug. 22, 1988) ................................................................................................ 5

*United States v. Moten*, 564 F.2d 620 (2d Cir. 1977) ................................. 10, 11

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) .................... 18

*United States v. Ong*, 541 F.2d 331 (2d Cir. 1976) ......................................... 11

*United States v. Papadakis*, 510 F.2d 287 (2d Cir. 1975) ................................. 4

*United States v. Parkes*, 497 F.3d 220 (2d Cir. 2007) ...................................... 19

United States v. Pilnick, 267 F. Supp. 791 (S.D.N.Y. 1967) ............................................ 15

United States v. Porter, 821 F.2d 968 (4th Cir. 1987) ........................................................ 5

United States v. Potamitis, 739 F.2d 784 (2d Cir. 1984) ................................................... 10

United States v. Ramos, 346 F. Supp. 2d 567 (S.D.N.Y. 2004) ....................................... 10

United States v. Reddy, No. S3-01-CR-00058, 2002 U.S. Dist. LEXIS 10795
    (S.D.N.Y. June 18, 2002) ........................................................................................... 10

United States v. Reyes, 922 F. Supp. 818 (S.D.N.Y. 1996) ............................................... 15

United States v. Saget, 377 F.3d 223 (2d Cir. 2004), cert. denied 543 U.S. 1079
    (2005) ......................................................................................................................... 13

United States v. Salameh, 152 F.3d 88 (2d Cir. 1998) ....................................................... 7

United States v. Santiago, 174 F. Supp. 2d 16 (S.D.N.Y. 2001) ...................................... 10

United States v. Scarpa, 913 F.2d 993 (2d Cir. 1990) ...................................................... 15

United States v. Shellef, 507 F.3d 82 (2d Cir. 2007) ...................................................... 5, 8

United States v. Turbide, 558 F.2d 1053 (2d Cir. 1977) ..................................................... 4

United States v. Turoff, 853 F.2d 1037 (2d Cir. 1988) ....................................................... 4

United States v. Vilar, No. 05 Crim. 0621, 2008 U.S. Dist. LEXIS 2541
    (S.D.N.Y. Jan. 14, 2008) ........................................................................................... 16

United States v. Walsh, 194 F.3d 37 (2d Cir. 1999) ......................................................... 18

United States v. Wilson, 493 F. Supp. 2d 364 (E.D.N.Y. 2006) ....................................... 19

Zafiro v. United States, 506 U.S. 534 (1993) ......................................................... 9, 10, 11

## Other Authorities

1 Charles Alan Wright, Federal Practice and Procedure § 129 (1982) ............................. 18

1A C. Wright & A. Leipold, Federal Practice and Procedure, § 144 (4th ed. 2008) ...... 4, 5

Notes of the Advisory Committee, 18 U.S.C.A., Rule 7 (1970) ........................................ 15

## Statutes and Rules

18 U.S.C. §1951(a) ................................................................................................... 19

Fed. R. Crim. P. 7(d) ............................................................................................... 15

Fed. R. Crim. P. 7(f) ........................................................................................... passim

Fed. R. Crim. P. 8(a) ................................................................................................. 4

Fed. R. Crim. P. 8(b) .......................................................................................... passim

Fed. R. Crim. P. 12(b) ............................................................................................... 1

Fed. R. Crim. P. 14 ............................................................................................. passim

Fed. R. Crim. P. 14(a) .............................................................................................. 10

Fed. R. Crim. P. 16 ............................................................................................. 15, 20

Fed. R. Crim. P. 57(b) ................................................................................... 1, 15, 16, 20

Defendant Dominick Memoli respectfully submits this Memorandum of Law in support of his Motion for the following relief pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure: (1) an Order severing Counts III-VII from the remainder of the Superseding Indictment or severing Mr. Memoli from the other defendants pursuant to Rule 8(b) or 14 of the Federal Rules of Criminal Procedure; and (2) an Order directing the Government to comply with Defendants' discovery requests pursuant to Rules 7(f), 16, and 57(b) of the Federal Rules of Criminal Procedure.

## STATEMENT OF FACTS[1]

The Superseding Indictment charges eight defendants in nine counts. Mr. Memoli is charged in only five of those counts, which relate to an alleged home invasion robbery in Morris County, New Jersey in September 2003, and an alleged home invasion robbery in Orange County, New York in October 2003 (collectively, the "Home Invasion Counts").[2] In November 2003, Mr. Memoli was incarcerated, and has since remained in the custody of the Bureau of Prisons. All of the remaining counts in the Indictment – in which Mr. Memoli is not charged – occurred after Mr. Memoli's incarceration, and are significantly different in kind. Those counts include:

- an alleged extortion in 2004 and 2005;

---

[1] The facts recited herein are taken from the Government's allegations and the Superseding Indictment, and are assumed to be true solely for the purpose of this motion.

[2] Specifically, the Home Invasion Counts include: conspiracy to commit a Hobbs Act robbery in Morris County, New Jersey in September 2003 (Count III); possession of a firearm in connection with that alleged conspiracy (Count IV); a Hobbs Act robbery in Orange County, New York in October 2003 (Count VI); conspiracy to commit that robbery (Count V); and possession of a firearm in connection with that robbery (Count VII).

- an alleged robbery of a business in October 2005; and

- an alleged transportation of stolen property in October 2005.

The only common thread among the Home Invasion Counts and the remaining, disparate counts is defendant John Melicharek, who is named in each; there is nothing else, either on the face of the Superseding Indictment or in the discovery provided by the Government, that would connect these alleged crimes.

In addition, in connection with the counts alleging extortion (the "Extortion Counts"), the Superseding Indictment alleges that Mr. Melicharek and two other defendants not named in the Home Invasion Counts were members or associates of the Genovese crime family. Exhibit B to Beamon Aff. (Superseding Indictment ¶¶ 1-3). None of the other defendants named in the Superseding Indictment – including Mr. Memoli – is alleged to be an associate or member of the Genovese crime family; to the contrary, the Government has disavowed that Mr. Memoli had any such affiliation.[3] Based upon the allegations in the Superseding Indictment and the Government's statements at various Court conferences, it appears that the Government will seek to introduce at trial significant evidence regarding the Genovese crime family, including its members and associates, their various ranks and associations, and interactions among members and associates. Exhibit B to Beamon Aff. (Superseding Indictment ¶¶ 1–6); see also Exhibit C to Beamon Aff. (Oct. 23 Tr., at 20) ("Now Mr. Melicharek . . . is not a made member of the Genovese crime family, but it's our information . . . that he's a very

---

[3] The original indictment ("Indictment") alleged that Mr. Memoli was "an associate of the Genovese crime family." See Exhibit A to Beamon Aff. (Indictment ¶ 7). That allegation has been removed from the Superseding Indictment.

2

high-ranking associate, as high ranking as any non-Italian associate can be.  He's very close with Angelo Prisco, who is a captain in the Genovese crime family."); Exhibit D to Beamon Aff. (Dec. 12 Tr., at 15-16) (defendant Melicharek was recorded "talking about helping to arrange a loan shark loan from Joey Leo, who's an associate of the Genovese family and the nephew of the boss of the family, Danny Leo.  Kicking up money from a Genovese associate to his capo, a man named Angelo Prisco, who's Mr. Melicharek's capo in the Genovese family.").  None of that evidence has any relation to Mr. Memoli or the Home Invasion Counts.

It also appears, based upon the provided discovery, that the Government will seek to introduce voluminous evidence regarding the Extortion Counts – including audiotapes and other evidence that contain, in the Government's words, "threats of violence, threats of physical harm, threats of we-know-where-you-live, we-know-who-your-family-is." Exhibit D to the Beamon Aff. (Dec. 12 Tr., at 9).  See also Exhibit C to the Beamon Aff. (Oct. 23 Tr., at 25) ("They made threats towards this business owner, threats including, 'Should I stab him?  Can I punch him?  We know where you live.'  In addition, Mr. Melicharek . . . took a pumpkin from in front of the business owner and crushed it to demonstrate a threat, and discussion of that is on tape.").  None of these materials relate to Mr. Memoli or the other defendants in the Home Invasion Counts; indeed, the extortion allegedly occurred better than a year following Mr. Memoli's incarceration.

Similarly, the counts relating to the alleged robbery and transportation of stolen property (the "2005 Melicharek Counts") have no relation to Mr. Memoli or the Home Invasion Counts.  Only Mr. Melicharek is charged in these counts, and they occurred almost two years after Mr. Memoli was incarcerated.  According to the Government,

these counts relate to an "undercover sting" involving a cooperating witness, about which there are several audio recordings.  <u>See</u> Exhibit C to the Beamon Aff. (Oct. 23 Tr., at 28).

Finally, with respect to the Home Invasion Counts, although the Government has alleged that there are several common participants in these two crimes, neither the Superseding Indictment nor the provided discovery establishes any other link between them.

<u>**ARGUMENT**</u>

**I.     Severance Should Be Granted Pursuant to Rule 8(b) or Rule 14**

Either the Home Invasion Counts should be severed from the remainder of the Superseding Indictment or Mr. Memoli should be severed from the other defendants pursuant to Rule 8(b) or 14 of the Federal Rules of Criminal Procedure.

1.     Severance of the Home Invasion Counts or
<u>Mr. Memoli Should Be Granted Pursuant to Rule 8(b)</u>

Rule 8(a) of the Federal Rules of Criminal Procedure governs joinder of offenses, while Rule 8(b) governs joinder of defendants.  Where, as here, a motion deals with misjoinder of both multiple offenses and multiple defendants, the more restrictive test of Rule 8(b) applies.  <u>United States v. Turoff</u>, 853 F.2d 1037, 1043 (2d Cir. 1988) (whether a defendant in a multi-defendant case challenges joinder of offenses or defendants, the motion is adjudicated under the more restrictive test of Rule 8(b)); <u>United States v. Papadakis</u>, 510 F.2d 287, 300 (2d Cir. 1975); <u>United States v. Turbide</u>, 558 F.2d 1053, 1061 n.7 (2d Cir. 1977); 1A C. Wright & A. Leipold, <u>Federal Practice and Procedure</u>, § 144, at 53-55 (4th ed. 2008).  Pursuant to Rule 8(b), offenses or defendants may not be joined unless they arise out of a series of acts or transactions, regardless of how similar

4

they may be in character.  United States v. Shellef, 507 F.3d 82, 97 (2d Cir. 2007);

United States v. Kopituk, 690 F.2d 1289, 1312 (11th Cir. 1982) (citing 1A C. Wright &

A. Leipold, Federal Practice and Procedure, § 144 (4th ed. 2008)).

"It is well settled . . . that two separate transactions do not constitute a 'series' . . .

merely because they are of a similar character or involve one or more common

participants." United States v. Lech, 161 F.R.D. 255, 256 (S.D.N.Y. 1995) (quotation

marks and citations omitted).  Rather, joinder is only proper where two or more persons'

criminal acts are "unified by some substantial identity of facts or participants or arise out

of a common plan or scheme." United States v. Attanasio, 870 F.2d 809, 815 (2d Cir.

1989) (quoting United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987)) (quotation

marks omitted).

(a)     There is No Substantial Identity of Facts or Participants

On the face of the Superseding Indictment, the only connection between the

Home Invasion Counts and the other counts is that defendant Melicharek is charged in all

of them.  This is patently insufficient to establish a "substantial identity of facts or

participants" such that they properly can be joined together.  See Attanasio, 870 F.2d at

815; Kotteakos v. United States, 328 U.S. 750, 773 (1946) (joining crimes of same nature

impermissible "when the only nexus among them lies in the fact that one man

participated in all"); United States v. Carrozza, 728 F. Supp. 266, 270 (S.D.N.Y. 1990)

("the mere existence of similarities between some of the actors or some of the crimes

committed will not suffice" for joinder under Rule 8(b)), aff'd, 956 F.2d 1160 (2d Cir.

1992); United States v. Moon, No. 88-CR-64, 1988 U.S. Dist. LEXIS 9306, at *10

(N.D.N.Y. Aug. 22, 1988) ("It is equally clear, however, that defendants charged with

5

two separate – albeit similar – conspiracies having one common participant are not, without more, properly joined.") (citation omitted).  As a result, where an indictment alleges multiple, independent conspiracies involving some of the same actors, joinder is not proper.  Carrozza, 728 F. Supp. at 270.  See also Lech, 161 F.R.D. at 257 (no suggestion that the moving defendant participated in the schemes other than the one with which he was charged).

With the exception of defendant Melicharek's presence as a defendant, nothing in the Superseding Indictment links the Home Invasion Counts to any of the other crimes alleged.  Indeed, besides defendant Melicharek, none of the defendants named in the Home Invasion Counts are even mentioned in any other count, and the Government has not produced in discovery any evidence linking the other defendants named in the Home Invasion Counts to these charges.  Moreover, Mr. Memoli was incarcerated at the time that the crimes alleged in the Extortion Counts and the 2005 Melicharek Counts supposedly occurred.  In sum, there is no link between the facts, victims, participants, or evidence related to the Home Invasion Counts and that related to the other counts.

### (b)    There is No Common Plan or Scheme

Moreover, the allegation that defendant Melicharek participated in multiple crimes does not establish that those alleged crimes are part of a single, unifying plan or scheme.  Tellingly, in the Superseding Indictment the Government neither charges an overarching conspiracy nor that racketeering connects these alleged crimes; instead, five separate and distinct conspiracies have been charged.[4]  Joinder of multiple defendants is

---

[4] Indeed, even in cases in which racketeering has been charged, courts have severed defendants who were not named in the Racketeer Influenced and Corrupt

impermissible in such circumstances, even where the distinct crimes or conspiracies are of the same nature, "when the only nexus among them lies in the fact that one man participated in all." Kotteakos, 328 U.S. at 773; Attanasio, 870 F.2d at 815.

Thus, at a minimum, the Home Invasion Counts have been improperly joined and should be severed from the other counts in the Superseding Indictment. Alternatively, Mr. Memoli should be severed from the other defendants, particularly in light of the fact that he was incarcerated at the time that the other alleged crimes occurred. Put another way, even if the Government were alleging an overarching conspiracy – which it is not – Mr. Memoli was not a participant as to the Extortion Counts or the 2005 Melicharek Counts. See United States v. Salameh, 152 F.3d 88, 150 (2d Cir. 1998) (a conspirator's incarceration may constitute withdrawal from the conspiracy based on the length and location of the internment, the nature of the conspiracy, and any other available evidence). The conspiracies alleged regarding the Home Invasion Counts are limited to September of 2003 and October of 2003, respectively. Mr. Memoli has been incarcerated continuously since almost immediately thereafter – November 2003 – and should not be considered a member of any overarching, unifying scheme with respect to the Extortion Counts or the 2005 Melicharek Counts.

---

Organizations ("RICO") Act counts. See, e.g., United States v. Bellomo, 954 F. Supp. 630 (S.D.N.Y. 1997) (severing defendants not charged with RICO violations from defendants charged with both RICO and non-RICO violations pursuant to Rule 14); United States v. Maisonet, No. S3-97-CR-0817 (DC), 1998 WL 355414, at *5 (S.D.N.Y. July 1, 1998) (same).

2.      The Morris County Home Invasion Counts Should Be Severed
        from the Orange County Home Invasion Counts Pursuant to Rule 8(b)

In addition, the counts related to the alleged Morris County home invasion

("Morris County Home Invasion Counts") and those related to the alleged Orange County

home invasion ("Orange County Home Invasion Counts") should be severed from one

another pursuant to Rule 8(b). The only common thread in these counts is that five

defendants are charged in both home invasions, which alone is not a proper basis for

joinder. Neither the Superseding Indictment nor any of the evidence provided in

discovery suggests that these alleged home invasions are related or shared a common

plan. The alleged victims are different, the alleged locations are different (indeed they

allegedly occurred in different states), the alleged witnesses are different, and the alleged

time periods for the conspiracies are different (September 2003 versus October 2003).

Although the Government has alleged that these two home invasions share a "similar

pattern," Exhibit D to the Beamon Aff. (Dec. 12 Tr., at 10), Rule 8(b) requires that

defendants are alleged to have participated in the same series of acts or transactions, not

merely in offenses "of the same or similar character." Shellef, 507 F.3d at 97; Lech, 161

F.R.D. at 256.

Furthermore, because the evidence that will be used to prosecute these allegations

will differ considerably – the alleged homeowners, victims and witnesses are different,

the alleged locations are in different states, and the alleged time periods for the separate

conspiracies are different – joining these counts will benefit neither judicial efficiency

nor economy. In light of the unavoidable multiplicity of witnesses and evidence, these

counts should not be joined. See, e.g., United States v. Gallo, No. 98 CR. 338 (JGK),

1999 WL 9848, at *3 (S.D.N.Y. Jan. 11, 1999) (severing two extortion conspiracies despite overlap of certain defendants, the victim, and periods of time because there was no "connection between the two").

Indeed, courts have severed similar but unrelated conspiracy charges as improperly joined under Rule 8(b) where there is no allegation of an overlapping conspiracy or scheme.  See, e.g., United States v. Giraldo, 859 F. Supp. 52, 54 (E.D.N.Y. 1994) (severing two conspiracies that did not "temporally overlap" where there was "no suggestion" that all of the defendants "knew of or were involved in any overall scheme") (citations omitted), aff'd in relevant part, 80 F.3d 667 (2d Cir. 1996).  Courts have held that for joinder of distinct conspiracies to be proper under Rule 8(b), knowledge of an overall common plan must be shared by all participants – though one person may treat the separate acts as part of a common scheme, it is not enough if "he is the only one alleged to be aware of it."  United States v. Menashe, 741 F. Supp. 1135, 1138 (S.D.N.Y. 1990).

3.     Severance Should Also Be Granted Pursuant to Rule 14

If the Court determines that severance is not mandatory under Rule 8(b), the Court should nevertheless exercise its discretion to grant severance because Mr. Memoli "will be prejudiced by joinder."  Fed. R. Crim. P. 14.  Severance is appropriate under Rule 14 "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993).

Pursuant to Rule 14, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate

9

trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  This severance decision is committed to the discretion of the trial court.  <u>Zafiro</u>, 506 U.S. at 538-39; <u>Opper v. United States</u>, 348 U.S. 84, 95 (1954).

       The determination of whether the prejudice of a joint trial warrants severance is a fact-specific inquiry that necessarily depends upon the circumstances of each case. <u>See, e.g.</u>, <u>Zafiro</u>, 506 U.S. at 539; <u>see also</u> <u>United States v. Potamitis</u>, 739 F.2d 784, 790 (2d Cir. 1984).  In <u>United States v. Gallo</u>, the court listed a number of factors that should be considered in determining whether to grant severance:  "[1] the number of defendants and [2] the number of counts; [3] the complexity of the indictment; [4] the estimated length of the trial; [5] disparities in the amount or type of proof offered against the defendants; [6] disparities in the degrees of involvement by defendants in the overall scheme; [7] possible conflict between various defense theories or trial strategies; and, [8] especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant."  668 F. Supp. 736, 749 (E.D.N.Y. 1987), <u>aff'd</u>, 863 F.2d 185 (2d Cir. 1988); <u>United States v. Ramos</u>, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004) (citing <u>Gallo</u>); <u>United States v. Santiago</u>, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001) (citing <u>Gallo</u>); <u>United States v. Reddy</u>, No. S3-01-CR-00058, 2002 U.S. Dist. LEXIS 10795, at *32 (S.D.N.Y. June 18, 2002).

       None of these factors is dispositive, nor are there bright-line rules to determine which combination of factors mandates severance.  <u>See</u> <u>United States v. Moten</u>, 564 F.2d 620, 627 (2d Cir. 1977).  Rather, the relevant inquiry is whether a jury would be

"reasonably able" to consider the evidence as to each defendant separately and independently of the evidence against his or her co-conspirators.  Id.

A weighing of the relevant factors demonstrates that Mr. Memoli's right to a fair trial would be unduly prejudiced if severance were not granted.  First, the Government intends to introduce evidence that would be inadmissible if Mr. Memoli or the Home Invasion Counts were tried separately.  Courts have routinely noted that evidentiary determinations can result in prejudice to defendants against whom the proof is inadmissible.  See, e.g., United States v. Ong, 541 F.2d 331, 338 (2d Cir. 1976).  As the Supreme Court has noted, severance is warranted where there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence. Zafiro, 506 U.S. at 539.  Such a risk can be present where, as here, evidence of a co-defendant's wrongdoing could lead a jury to conclude that the defendant is guilty.  Id.

This risk is particularly acute here, in light of the allegations that other defendants are involved with organized crime.  More specifically, the Extortion Counts allege that defendants Melicharek, Iuni, and Nicosia are members and associates of the Genovese crime family.  Exhibit B to Beamon Aff. (Superseding Indictment ¶¶ 1–3, 5).  See also Exhibit C to Beamon Aff. (Oct. 23 Tr., at 20) ("Now Mr. Melicharek . . . is not a made member of the Genovese crime family, but it's our information . . . that he's a very high-ranking associate, as high ranking as any non-Italian associate can be.  He's very close with Angelo Prisco, who is a captain in the Genovese crime family."); Exhibit D to Beamon Aff. (Dec. 12 Tr., at 15-16) (further allegations regarding defendant Melicharek's connection to organized crime).  Introduction of such evidence in a joint trial would be extremely prejudicial to Mr. Memoli who, by the Government's own

admission, is not a crime family associate.  See United States v. Bellomo, 954 F. Supp. 630, 650 (S.D.N.Y. 1997) ("This evidence might prejudice these defendants significantly because the trial would include a great deal of evidence about an organized crime enterprise and its operations which would not be presented at a separate trial.").  See also United States v. Locascio, 357 F. Supp. 2d 536, 544 (E.D.N.Y. 2004) ("[T]he mere association with a Mafia family is, in itself, highly prejudicial.  Where the majority of defendants are alleged to have been members of the Family or associated therewith, it would be very difficult for a jury to avoid carrying over these highly prejudicial allegations.")  We respectfully submit that this prejudice, standing alone, necessitates severance.

In addition, the Government apparently intends to offer voluminous audiotape evidence against defendant Melicharek and the other defendants in the Extortion Counts that is irrelevant to the charges against Mr. Memoli and the Home Invasion Counts. Much of that evidence, which would be inadmissible against Mr. Memoli or the other defendants in the Home Invasion Counts, would be highly prejudicial in a joint trial.  See, e.g., Exhibit D to Beamon Aff. (Dec. 12 Tr., at 14) ("[T]here's a recording . . . where Mr. Melicharek is discussing with the cooperating witness, who's wearing a body wire, his plans to do another violent break-in of another business associate of his."); Id. at 9 ("Mr. Melicharek and others essentially did an old-fashioned shakedown, $50,000 from a contractor, including threats of violence, threats of physical harm, threats of we-know-where-you-live, we-know-who-your-family-is.  Mr. Melicharek made those threats directly."); Exhibit C to Beamon Aff. (Oct. 23 Tr., at 25) ("They made threats towards this business owner, threats including, 'Should I stab him?  Can I punch him?  We know

12

where you live.'  In addition, Mr. Melicharek . . . took a pumpkin from in front of the

business owner and crushed it to demonstrate a threat, and discussion of that is on

tape.").[5]

There are also significant disparities between Mr. Memoli and certain of his co-

defendants in the amount of proof that will be offered against them.  "Where the evidence

against the minor defendants is so little or so vastly disproportionate in comparison to

that admitted against the remainder of the defendants, the likelihood of spillover

prejudice is greatly enhanced."  Gallo, 668 F. Supp. at 736 (quoting United States v.

Capra, 501 F.2d 267, 281 (2d Cir. 1974) (quotation marks omitted)).  In such

circumstances, a joint trial can be "particularly injurious" to defendants who are charged

in only a few of many counts, involved in a small proportion of the evidence, and linked

with only a few co-defendants.  United States v. Branker, 395 F.2d 881, 888 (2d Cir.

1968).  See also United States v. Kelly, 349 F.2d 720, 759 (2d Cir. 1965).  As noted

above, Mr. Memoli is not charged in four of the counts in the Superseding Indictment.

---

[5] Additionally, the introduction of audio evidence could raise a Sixth Amendment
Confrontation Clause issue under Crawford v. Washington, 541 U.S. 36 (2004), or Ohio
v. Roberts, 448 U.S. 56 (1980), and its progeny.  If statements inculpating Mr. Memoli
are deemed testimonial and the speaker is a co-defendant refusing to testify, Crawford
applies and the Confrontation Clause is implicated.  541 U.S. 36 (2004).  Where
statements are deemed non-testimonial, the Second Circuit reverts back to Roberts and its
progeny.  United States v. McClain, 377 F.3d 219, 221 n.1 (2d Cir. 2004).  See also
United States v. Saget, 377 F.3d 223, 227-31 (2d Cir. 2004), cert. denied, 543 U.S. 1079
(2005) (analyzing admissibility of co-conspirator's statements to confidential informant
under Roberts).  Pursuant to this line of cases, even "concededly clear instructions to the
jury" to disregard a co-defendant's inadmissible hearsay evidence inculpating the
defendant are not an adequate substitute for the defendant's constitutional right of cross-
examination.  Bruton v. United States, 391 U.S. 123, 137 (1968).  As noted below in
Point II, we have asked the Government to identify the audiotapes that it seeks to
introduce at trial.  If any tapes raising this Confrontation Clause issue are identified, Mr.
Memoli will seek severance on this ground, as well.

Those charges involve allegations regarding the Genovese crime family, extortion, robbery of a business, and interstate transportation of stolen property. The evidence that will be offered in support of these charges includes voluminous audio recordings, victim testimony, victim identification of certain defendants, and, presumably, cooperating witness testimony – none of which will relate to Mr. Memoli or the Home Invasion Counts. In addition, the Government will likely seek to introduce significant testimony regarding the alleged operation of the Genovese crime family. See United States v. Gotti, No. S8-02-CR-743 (RCC), 2004 WL 2423799, at *1 (S.D.N.Y. Oct. 29, 2004).

Relatedly, because there are far fewer allegations regarding Mr. Memoli's involvement in the crimes in which he is charged, a much smaller portion of the evidence will relate to him, but he will be "swamped by this mass of irrelevant evidence" that will be offered against the defendants in the Extortion Counts. United States v. DiNome, 954 F.2d 839, 844-45 (2d Cir. 1992). Permitting the jury to hear such evidence while Mr. Memoli sits in court would prejudice him such that "no amount of cautionary instruction could … [undo] the harm." Kelly, 349 F.2d at 758.[6]

---

[6] Furthermore, possible conflicts among defense theories and trial strategies may work to the detriment of all defendants. See, e.g., Gallo, 668 F. Supp. at 751. If the defenses reach a level of antagonism such that the jury must necessarily disbelieve the testimony offered on behalf of one defendant in order to believe the testimony offered on behalf of another defendant, severance is required. See United States v. Carpentier, 689 F.2d 21, 28 (2d Cir. 1982) (citing United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir. 1981)). See also United States v. Haynes, 16 F.3d 29, 31-32 (2d Cir. 1994) (severance is justified where joinder compromises a specific trial right, though mutually antagonistic defenses are not prejudicial per se). At this early stage of the case, it is difficult to discern with any certainty the extent to which the defense theories and trial strategies for the various co-defendants will conflict with one another. However, courts in multi-defendant trials involving multiple, unrelated counts have granted severance based on antagonistic defense strategies. See, e.g., United States v. Copeland, 336

If, by contrast, the Home Invasion Counts were severed, none of this prejudicial evidence would be introduced, two defendants and four counts would be eliminated from the Superseding Indictment, and the trial would be significantly more efficient.[7]  In sum, severing Mr. Memoli or the Home Invasion Counts is warranted pursuant to Rule 14 and the applicable case law because a joint trial would result in prejudicial spillover of evidence and possible conflicts among defense theories and trial strategies.

## II.    The Government Should Be Directed to Comply with Defendants' Discovery Requests

Pursuant to the Court's inherent authority to regulate the nature and timing of discovery and Rules 7(f), 16 and 57(b) of the Federal Rules of Criminal Procedure, the Court should require the Government to comply with Defendants' discovery requests. The relief requested is necessary to ensure that Mr. Memoli is supplied with all evidence and documentation that the Government is required to disclose, and is able to properly and timely prepare for trial in this matter.

---

F. Supp. 2d 223, 224-25 (E.D.N.Y. 2004) (mutually antagonistic defenses so prejudicial as to warrant severance under Rule 14).

[7] References to organized crime should be eliminated as surplusage in any indictment against Mr. Memoli resulting from severance.  Such references are irrelevant to the crimes in which he is charged, and are inflammatory and prejudicial.  Fed. R. Crim. P. 7(d); United States v. De Palma, 461 F. Supp. 778, 797 (S.D.N.Y. 1978) (citing United States v. Pilnick, 267 F. Supp. 791 (S.D.N.Y. 1967); United States v. Chas. Pfizer & Co., 217 F. Supp. 199, 201 (S.D.N.Y. 1963); Notes of the Advisory Committee, 18 U.S.C.A., Rule 7 (1970)); United States v. Reyes, 922 F. Supp. 818, 839 (S.D.N.Y. 1996) (Scheindlin, J.) (quoting United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990)).

1.     The Government Should Be Required to Identify
       <u>Prior to Trial the Audio Evidence It Will Seek to Introduce</u>

The Government has provided Mr. Memoli with 15 audio CDs comprised of approximately 28 separate audio tracks.  These audio tracks contain nearly 50 hours of audio.[8]  By letter dated February 7, 2008, Mr. Memoli requested that, prior to trial, the Government specifically identify from among the voluminous audio recordings it produced any portions that it will seek to introduce into evidence.  <u>See</u> Exhibit E to Beamon Aff. (letter from Martine Beamon to Elie Honig dated February 7, 2008).  The Court should require the Government to comply with this request.

The Second Circuit has recognized a district court's inherent authority to regulate the nature and timing of discovery.  <u>See</u> <u>United States v. Cannone</u>, 528 F.2d 296, 298 (2d Cir. 1975); <u>United States v. Giffen</u>, 379 F. Supp. 2d 337 (S.D.N.Y. 2004).  Further, Federal Rule of Criminal Procedure 57(b) states that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."  <u>See</u> <u>United States v. Vilar</u>, No. 05 Crim. 0621, 2008 U.S. Dist. LEXIS 2541, at *63–64 (S.D.N.Y. Jan. 14, 2008) ("[W]hile no statute or rule specifically mandates disclosure of an exhibit list, the Court finds that it is reasonable, under the circumstances of this case, to order production of the Government's exhibit list prior to trial").  In particular, there is precedent in this District for requiring the Government to identify the audiotapes that it will seek to introduce prior to trial.  <u>See</u> <u>United States v. Gotti</u>, 399 F. Supp. 2d 214, 222 (S.D.N.Y. 2005) (directing the Government to produce a list identifying "precisely which

---

[8] This estimate of the total duration of the audio tracks is based on counsel's review of the audio files produced.  As produced by the Government in FBird format, the production purports to contain nearly 200 hours of audio.

16

tapes [it] expects to introduce at trial" prior to trial), aff'd sub nom. United States v. Matera, 489 F.3d 115 (2d Cir. 2007).

In the instant case, timely identification of the audio evidence that the Government plans to introduce at trial will serve two important interests. First, it will allow Mr. Memoli the opportunity to file any motions in limine to challenge the admissibility of the tapes on audibility or other grounds. Second, it will help secure Mr. Memoli's right to a fair trial and aid in the orderly presentation of his defense at trial.

For these reasons, Mr. Memoli respectfully requests that the Court direct the Government to identify the audio evidence it intends to introduce at trial by no later than June 6, 2008, and that Mr. Memoli subsequently be permitted to file any appropriate motions in limine to challenge the admissibility of such evidence.

2.    The Government Should Be Required to Provide
        Particularity with Respect to Certain Allegations

By letter dated February 7, 2008, Mr. Memoli also requested that the Government provide a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). See Exhibit E to Beamon Aff. (letter from Martine Beamon to Elie Honig dated February 7, 2008). The following items were requested:

1.    Identify in what way interstate commerce was obstructed, delayed, or affected as alleged in paragraph seven.

2.    Specify in what manner Mr. Memoli participated in the conspiracy alleged in paragraph seven.

3.    Specify in what manner Mr. Memoli "used, carried, possessed and brandished a firearm, in relation to and in furtherance of [a crime of violence]" as alleged in paragraph eight.

4.    Identify in what way interstate commerce was obstructed, delayed, or affected as alleged in paragraphs nine and ten.

17

5.    Specify in what manner Mr. Memoli participated in the conspiracy alleged in paragraph nine.

6.    Specify in what manner Mr. Memoli "used, carried, and possessed a firearm, in relation to and in furtherance of [a crime of violence]" as alleged in paragraph 11.[9]

The Court should require the Government to comply with these requests. Rule 7(f) permits a defendant to seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). See also United States v. Nachamie, 91 F. Supp. 2d 565, 570-72 (S.D.N.Y. 2000). The decision to grant a bill of particulars rests within the sound discretion of the district court. Bortnovsky, 820 F.2d at 574.

A bill of particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citation omitted). Further, "if necessary to give the defendant enough information about the charge to prepare his defense, [a bill of particulars] will be required even if the effect is disclosure of evidence or of theories." United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998) (quoting 1 Charles Alan Wright, Federal Practice and Procedure § 129 (1982) (internal quotation marks omitted)).

---

[9] Defendant Melicharek also requested particularity with respect to these and other items by letter dated January 8, 2008, and Mr. Memoli joined in Mr. Melicharek's additional requests in his February 7, 2008 letter to the Government. See Exhibit E to Beamon Aff. (letter from Martine Beamon to Elie Honig dated February 7, 2008).

18

The Superseding Indictment and discovery produced to date do not meet this standard. First, Mr. Memoli has not been apprised of the manner in which the Government alleges he participated in the charged conspiracies, and courts have granted bills of particulars in similar situations. See United States v. Wilson, 493 F. Supp. 2d 364 (E.D.N.Y. 2006) (requiring a bill of particulars to apprise the defendant of the role he played in a narcotics trafficking conspiracy); Barnes, 158 F.3d at 665-666 (though it was harmless error, where defendant was charged in one conspiracy count within an indictment that provided "not a shred of detail," trial judge should have granted a bill of particulars to apprise the defendant of the conduct he was alleged to have undertaken in furtherance of the conspiracy). Neither the Superseding Indictment nor the discovery provides any detail to Mr. Memoli as to his role or participation in the alleged conspiracies. See Exhibit B to Beamon Aff. (Superseding Indictment ¶¶ 7, 9).

In addition, the Government has not specified, in the discovery or otherwise, how, if at all, the alleged home invasions affected interstate commerce – a critical element of any Hobbs Act charge. See 18 U.S.C. §1951(a); United States v. Parkes, 497 F.3d 220, 227 (2d Cir. 2007) (under the Hobbs Act, the government must prove the elements of the underlying crime and an effect on interstate commerce). Although the original Indictment alleged that the home invasions involved the "proceeds of a business that engaged in interstate and international commerce," Exhibit A to Beamon Aff. (Indictment ¶¶ 8, 10, 14), the Government has deleted such references from the Superseding Indictment. Exhibit B to Beamon Aff. (Superseding Indictment ¶¶ 7, 9-10). Finally, although Mr. Memoli is charged with possession of a firearm in connection with the alleged Orange County home invasion, the discovery provided by the Government

contains no reference to the use of any weapon.  The requested particularization will assist Mr. Memoli materially in preparing a defense, especially in light of the lack of information provided by the Government and the lengthy delay of time – over four years – since the events alleged.  Thus, Mr. Memoli respectfully requests that the Court direct the Government to provide a bill of particulars.

**III.    Mr. Memoli Adopts the Motions of His Co-Defendants to the Extent They Are Not Inconsistent with the Instant Motion**

To the extent they are not inconsistent with this motion, Mr. Memoli adopts the motions and arguments of his co-defendants, including the discovery-related requests made by defendants Melicharek and Iuni.

## <u>CONCLUSION</u>

For the reasons set forth above, defendant Dominick Memoli respectfully requests that the Court grant an Order (1) severing Counts III-VII from the remainder of the Superseding Indictment or severing Mr. Memoli from the other defendants pursuant to Rule 8(b) or 14 of the Federal Rules of Criminal Procedure; (2) directing the Government to comply with Defendants' discovery requests pursuant to Rules 7(f), 16, and 57(b) of the Federal Rules of Criminal Procedure; and (3) granting such other and further relief as the Court deems just and proper.

20

Dated:    February 15, 2006
          New York, New York


                              By:    /s/ Martine M. Beamon
                                     _____
                                     Martine M. Beamon (MB 1687)
                                     Jared R. Winnick (JW 1229)
                                     DAVIS POLK & WARDWELL
                                     450 Lexington Avenue
                                     New York, New York  10017
                                     Telephone:  (212) 450-4000
                                     Fax:  (212) 450-3800

                                     Counsel for Defendant
                                       Dominick Memoli